[Civil No. 1494. Filed March 25, 1916.]

[156 Pac. 83.]

## P. T. HURLEY, Appellant, v. W. H. WILKY and EMMA A. WILKY, Appellees.

1. CORPORATIONS—SALE OF STOCK—CONTRACTS—MEETING OF MINDS.—Where the maker of a note intended it as the purchase price of stock in an insurance company, while the payee believed he was selling stock in a holding corporation, there was no meeting of the minds and no binding contract as to the sale of the stock.

2. CORPORATIONS—SALE OF STOCK—ESTOPPEL.—The failure of one who thought he was buying stock in an insurance company, and who gave a note for the purchase price, to examine the certificate attached to the note at the time he executed a renewal note, which would have disclosed that it was for stock in a holding company, did not, in the absence of anything to arouse his suspicions, or any action by the other party to his injury, estop the maker from setting up want of consideration for the note.

3. BILLS AND NOTES—DEFENSES—WANT OF CONSIDERATION—RENEWAL NOTE.—Between the original parties to a note, the defense of want of consideration can be urged against a renewal note as well as against the original note.

4. BILLS AND NOTES—DEFENSES AGAINST INNOCENT PURCHASERS—FRAUD AND WANT OF CONSIDERATION.—The defenses of fraud and want of consideration cannot be interposed against a *bona fide* purchaser for value in due course.

5. CORPORATIONS—SALE OF STOCK—FRAUD—REPRESENTATIONS OF INCREASE.—A representation by the seller of corporate stock that it would increase to a certain price within a year, and that he would guarantee to sell it for that if given the privilege, is not fraudulent.

6. BILLS AND NOTES—BURDEN OF PROOF—FRAUD—WANT OF CONSIDERATION.—In an action on a note, fraud and want of consideration are affirmative defenses, which must be established by defendant by clear and convincing proof.

[As to burden of proving fairness of transaction, see note in Ann Cas. 1912A, 704.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Reversed and remanded.

Messrs. Armstrong & Lewis, for Appellant.

Messrs. Cox & Phelps, for Appellees.

ROSS, C. J.—This action was instituted by appellant, P. T. Hurley, to recover $2,000 on a note dated May 12, 1913, of which appellees were the makers and appellant the payee. The note, as shown upon its face, was secured by "1,000 shares of Arizona Fire stock as collateral." The appellees' defense to the note was: First, want of consideration; and, second, fraud in its obtaining. The case was tried to a jury, whose verdict was in favor of appellees; judgment was entered ac-

cordingly. This appeal is prosecuted from the judgment and also the order overruling motion for a new trial.

The appellant's specifications of error are that the court erred in the admission of evidence on the part of the appellees, in overruling the appellant's motion for a directed verdict at the conclusion of the case, and in instructions given to the jury at the request of appellees and upon its own motion. If there be anything to appellant's first assignment of error, which we doubt, it is of minor importance, and, we gather, was so viewed by the appellant in the trial of the cause, for the reason that, whereas some objections were interposed in the early stages of the trial, later on both sides took, and were permitted, great latitude in the questions propounded, both on direct and cross-examinations of the witnesses, with the very commendable purpose, as we conceive it, of trying to reach the real merits of the case. If any errors were committed in the admission of evidence, it is not in the character of the evidence so much as in the manner of its presentation, and, therefore, could hardly prejudice the rights of the appellant.

However, it is contended by the appellant that the evidence wholly failed to sustain the allegations of defendants' answer, alleging want of consideration and fraud. The facts as disclosed by the answer and the evidence, succinctly stated, are as follows: The appellant was the owner of some of the capital stock of the Arizona Finance Company, capitalized at $500,000, which was the holding company of the Arizona Fire Insurance Company, capitalized at $200,000, and its whole assets consisted of the capital stock of the latter company. In the month of March, 1912, appellee W. H. Wilky, dealing with one E. A. Ensign, who represented himself to be the agent of the Arizona Fire Insurance Company, purchased, or undertook to purchase, 1,000 shares of the treasury stock of said company at $2 per share, and gave his note in payment thereof, due in twelve months, said note being payable to the maker's order; that is, to "myself." Ensign was not the agent of the Arizona Fire Insurance Company, and had no authority from said company to sell any of its stock. He was the agent of appellant, Hurley, from whom he had authority to sell on commission the latter's stock in the Arizona Finance Company. At the time of the execution of the note, no certificate of stock was exhibited or delivered to Wilky. After he had signed the note

for $2,000, he indorsed it in blank. Shortly thereafter the note turned up in the hands of appellant, Hurley, as the owner thereof, it having been given to him by his agent Ensign as the purchase price of 1,000 shares of the Arizona Finance Company stock. He thereupon indorsed the same over to Dr. Win Wylie, who discounted the note for $1,880, of which appellant received $1,400, and the agent who negotiated the sale, $480. When the note became due the holder thereof, Dr. Wylie, placed it in the hands of his attorneys for collection. Wilky, when threatened with a lawsuit, saw Hurley and informed him that he was unable to pay the note, offered to surrender to Hurley the stock that he had contracted for if Hurley would cancel his obligation. Hurley then offered to, and did, borrow $2,000 with which to pay the note. The note was paid by Hurley, with the agreement that Wilky would execute his note to Hurley for $2,000, which is the note sued upon. At the time of its execution, or shortly thereafter, Hurley requested that Mrs. Wilky sign the note with her husband, which was done. The evidence is undisputed that appellee Wilky thought he bought 1,000 shares of the treasury stock of the Arizona Fire Insurance Company; that Ensign represented to him that he was selling him treasury stock of that company. It is also shown that none of the stock of the Arizona Fire Insurance Company was or could be issued to the general public; that the only stock that had ever been sold to the general public was the stock of the Arizona Finance Company, which was generally spoken of and known as ''Arizona Fire stock.'' There is nothing in the record, however, to show that Wilky knew that there was any such company as the Arizona Finance Company. He says in his testimony that he did not know of such company until he was sued. The certificate of stock representing 1,000 shares was not issued to appellee Wilky, but was issued in the name of Win Wylie. In fact, no stock of either company of any kind was ever issued directly to appellee Wilky. This certificate of stock was attached to the Wylie note, and when that note was paid off and surrendered to appellee, it was attached to the note sued on. Wilky testified that he did not have hold of it or examine the certificate; that he only saw it in the hands of appellant, Hurley, and that at the time he signed the last note he was still of the opinion that it represented 1,000 shares of the treas-

ury stock of the Arizona Fire Insurance Company. His state-
ment in that regard is undisputed.

The above state of facts suggest two questions: First, Did
the minds of the parties ever meet, so as to make a binding
contract, or was the conduct of the parties such as to create
a contract by implication of law? Second, Did the giving of
a new note, signed by the appellee and his wife, in lieu of the
old note, have the effect of precluding or estopping appellee
from setting up a want of consideration?

Answering the first question, the evidence shows without
contradiction that the appellee thought he was buying Arizona
Fire Insurance Company stock, and this delusion remained
with him until he was sued. It is equally as certain that the
appellant believed he was selling appellee Arizona Finance
stock. It is quite clear that no binding contract was entered
into by agreement, the all-essential element of every contract—
the meeting of the minds of the parties—not having occurred.

Nor do we think a contract resulted from the conduct of the
parties by operation of law, for the reason that the seller of
the stock did not issue, or cause to be issued, any certificate
thereof to the purchaser, and the latter not having seen or
had in his possession any certificate of stock issued to himself,
might reasonably have relied upon his contract as he under-
stood it and expected to receive shares of stock of the Arizona
Fire Insurance Company in payment of his note. Nor do we
think his neglect to examine the certificate attached to the
note issued in the name of Dr. Wylie, and make inquiry as
to its meaning, in the absence of a showing that appellant's
rights had been prejudiced without his fault, should preclude
him from showing what he understood his contract to be.
Nothing had been said or done to arouse or excite his sus-
picions that he would not get the stock he had bargained for
as soon as his note was paid, and he, not being in a position
to demand the stock, was charged with no imperative duty to
scrutinize and examine the certificate attached to the Wylie
note or the renewal note. We do not feel that his oversight
or neglect to investigate more thoroughly, doubtless born of his
confidence in the seller to give him the thing he thought he
was buying, estops him from showing the real transaction, es-
pecially under the facts of this case.

XVIII Ariz.—4

At the time of the giving of the renewal note the appellee at least, and perhaps the appellant, was laboring under the same delusions as when the first note was executed; that is, the appellee was laboring under the impression that he was paying for 1,000 shares of the Arizona Fire Insurance Company stock, whereas the appellant thought he was being paid for 1,000 shares of the Arizona Finance Company stock. The first note was not made payable to the appellant or his order, but to the order of the maker, Wilky. It was, however, immediately turned over to appellant as his property. While his name did not appear in the note as payee, he was in fact the payee, as shown by the subsequent transactions. He sold the note and received the proceeds thereof. In the renewal note he is made the payee.

There is no element of innocent purchaser for value involved in the case. As between Wylie and Wilky, assuming that Wylie was a *bona fide* purchaser for value in due course, the appellee would not have been permitted to interpose the defenses of fraud or want of consideration. But as between the original parties, their privies and purchasers of the notes with notice, the rule, as we understand it, will permit the defenses of fraud or want of consideration, not only to the original note, but also to the renewal note. It is stated in Cyc., volume 7, page 880, as follows:

"As between the original parties, and as against transferees who are not *bona fide* purchasers for value, a renewal note is open to all defenses which touch the consideration of the original note, as want or failure of consideration, fraud, usury, or other illegality."

Daniel on Negotiable Instruments, section 177, states the rule as follows:

"That the bill or note has been lost or stolen, or was executed under the exercise of undue influence, or under duress, or under fraudulent misrepresentations, or for fraudulent consideration, or for illegal consideration, or has been fraudulently obtained from an intermediate holder, or been in any way the subject of fraud or felony, or has been misappropriated and diverted, or that it was given as collateral security, or for a loss for which party was not liable, or that otherwise it was without valuable consideration, is a good defense as between the parties privy to it. And in some cases

that it was given by mistake for too great a sum, or when no sum was due, the evidence showing fraud or a total or partial want of consideration. The same defense which the defendant might make to an action by an indorsee of the note given by him, and the same requirement of proof may be made by him in an action on a renewal of a former note, both notes being regarded as given upon the same consideration."

And at section 205 he says:

"When the first note was without consideration, a renewal note is also."

We think the issue of want of consideration was properly submitted to the jury, and that the court did not err in refusing an instructed verdict at the close of appellee's case.

We do not deem it necessary to discuss the alleged fraud features of the case further than we have touched upon them in the discussion of the other question. Stress is laid upon the representation of appellant's agent that the stock would go up to $3 within a year, and that he would guarantee to sell it for that much if given the privilege. Such and kindred statements, if made, would not constitute fraud.

We do not think the instructions given at the request of the appellees, and of which complaint is made, misstate the law as applied to the facts of this case. However, the court on its own motion told the jury that:

"Unless the plaintiff satisfies you throughout the entire case of the correctness of his story to such an extent that it outweighs the proof of the defendant, he cannot recover; in other words, if the testimony is evenly balanced, it shows that there is some doubt in your minds; that is not sufficient. That is, if the testimony of the plaintiff weighs just the same as that of the defendant, you must find for the defendant. The plaintiff can only recover where his testimony outweighs that of the defendant."

This instruction states a correct proposition of law when applied to an ordinary case, for the reason that the plaintiff usually assumes the affirmative, but it has no application to the facts of this case. In the first place, the presumption is that the note sued upon was given for a valuable consideration and free from any fraud or imposition. Appellees dispute this presumption and allege in their answer that the note was given without consideration, and that fraud was

practiced upon them to secure the note. These are affirmative defenses and, of course, must be established by clear and convincing proof. It was incumbent upon the appellees to establish these defenses by a preponderance of the evidence, and it was error for the court to take from them this burden and place it upon the appellant.

For this error it is necessary that the case be reversed and remanded for a new trial, and it is accordingly ordered.

FRANKLIN, J., concurs.

CUNNINGHAM, J. (Dissenting).—I am not content to agree with the majority opinion in so far as the rule applicable to the defense of failure, or absence of consideration, when applied to the facts of this case, presented an occasion for the decision of a jury. The majority opinion holds that as between parties to the note and their privies, such defenses may be interposed, in which I concur.

Such defenses, in substance, were interposed to this action, and plaintiff, appellant concedes and offered testimony to establish that an original note was given by appellee W. H. Wilky, payable to "myself" and indorsed by the maker, and delivered to appellant; that the purpose of the note was to represent the consideration the maker agreed to pay for 1,000 shares of corporation stock; that the parties intended that the stock should be delivered only upon payment of the note; that the note was transferred to a holder without notice, and the stock involved was issued in the name of such holder by the corporation, and by the holder annexed to the note; and that the note matured and the maker, Wilky, did not pay. Hurley paid the note in the hands of his indorsee, took over the certificate of stock annexed thereto, which was then indorsed in blank by the party to whom it was originally issued. Wilky and his wife made this note in suit, in lieu of the old note and for the same purpose, and delivered it to Hurley, and Hurley held the new note and the stock certificate with such note until the new note matured. After maturity, Hurley sued upon the note and retained the certificate of stock, and concedes that he still retains possession of such certificate of stock.

This is not a suit in equity for specific performance of a contract, nor is equitable relief demanded by either party to the action. A judgment in favor of the plaintiff would leave the stock in plaintiff's possession and also a right to enforce by execution the judgment recovered, which would mean that plaintiff, Hurley, would be permitted to retain his stock and receive pay for the identical stock. If the defendant ever received any kind of valuable consideration for his note, such consideration remained in plaintiff's possession, and the word "received" is without meaning. Of course, defendant could pay the judgment and trust to Hurley to give him the stock, and I have no doubt defendant would get the stock after he made such payment, and perhaps would not be required to resort to a lawsuit for that purpose. Had he paid the first note in Dr. Wylie's (Hurley's indorsee's) hands, he would have received the stock, no doubt, and had he paid the new note in Hurley's hands, he would have received the stock, no doubt, and in either supposed case, after the note should have been paid, if the party to whom payment was made had received the money in payment and refused to deliver the stock, delivery may have been enforced, or the money paid recovered.

The delivery of the stock and payment of the purchase price are shown to be the terms of the transaction, and require concurrent performance. When the note was not paid, the seller was under no duty to deliver the stock. Likewise when the stock was not delivered, the maker of the note was under no duty to pay the note. The payee of the note shows no inclination, up to this time, to tender a delivery of the stock, nor to keep good such tender in the usual manner, but he insists that the stock is held as collateral security for the payment of the note. Clearly no consideration exists for the note in such event, and the evidence of the plaintiff is conclusive of that fact.

The defendants are conclusively shown to have received absolutely nothing for their note. They were promised nothing for their note—the extent of plaintiff's promise was to deliver to defendant W. H. Wilky 1,000 shares of stock, not in consideration of the note, but in consideration that Wilky pay $2,000 pursuant to the terms of the note—promised that when the consideration should be paid, the stock

would be delivered. Evidence of such contract is conclusive evidence of absence of consideration other than a promise for a promise; and, as between the original parties, conclusively shows that neither plaintiff nor defendant is in default until one party to the contract is ready, willing and offers to perform.

Under the conceded facts the defendant agreed to buy and pay for 1,000 shares of stock. He gave his note as evidence of his promise, but he indicated no intention of buying such stock until the time for the payment of the note arrived. The plaintiff agreed to sell the defendant the said shares of stock in consideration of receiving $2,000 therefor at the date specified in said note. The transaction, in my opinion, was in law an executory contract of sale, by which the parties agreed that the contract would be executed, the stock delivered, and the consideration therefor paid on the date specified in the note for payment of the note. The defendant failed to pay the consideration. The plaintiff was under no duty to deliver the stock, but the defendant was under no duty to pay the note; he could refuse to buy and answer for the consequences.

When the defendant failed to perform his part of the contract of purchase, he was guilty of a breach of that contract. Plaintiff could sue for damages for the injury suffered; could offer performance on his part, show that he was ready and willing to perform on his part, and sue on the contract for the consideration promised; or, he could treat the contract as rescinded, return the note, and retain the stock. If plaintiff elected to sue for the breach of the contract, his damages would be the difference between the price defendant agreed to pay for the stock and the market value of the stock at the time the contract was breached. If he elected to recover on the contract as for performance on his part, he would be required to show that the stock was delivered, or that some act was performed by plaintiff equivalent in law to a delivery of the stock to defendant. If plaintiff elected to treat the contract as rescinded, his obligation to deliver the stock was at an end. The plaintiff has pursued neither of the courses mentioned, but has sued to enforce payment of the note as a contract duly performed on plaintiff's part, and does not

sue to recover the promised consideration for the stock. Clearly defendants cannot be held to have received any consideration for their note until they receive the stock, and they have elected not to buy that stock.

The plaintiff was required to show a right to recover, and until he did show a right *prima facie* he had the burden of proof. The error was in the failure of the court to instruct the jury to return a verdict for the defendants, because plaintiff failed to maintain the burden and establish a right to recover on the note sued.

The error complained of, viz., the instruction said to have misplaced the burden of proof, is harmless, because in no event under the evidence could the plaintiff recover upon the cause of action he asserts.

The judgment ought to be affirmed.

[Rehearing granted April 29, 1916. For opinion on rehearing, see *post,* page 270, 158 Pac. 639.]

On statements regarding the future and future promises as fraud, see notes in 35 L. R. A. 420, 437; 10 L. R. A. (N. S.) 640; 24 L. R. A, (N. S.) 735.