[Civil No. 2291.   Filed June 18, 1925.]

[237 Pac. 198.]

# THE YUMA NATIONAL BANK, YUMA, ARIZONA, Appellant, v. J. M. BALSZ, Appellee.

1. CONTRACTS—CONSIDERATION MUST BE RESULT OF AGREEMENT.—Consideration, like every other part of contract, must be result of agreement, and that which is mere fortuitous result flowing accidentally from an arrangement, but in no degree prompting the actors to it, is not legal consideration.

2. BILLS AND NOTES—WHETHER ACCOMMODATION MAKER'S INDIVIDUAL NOTES WERE RENEWALS OF ORIGINAL NOTES, OR WERE GIVEN IN CONSIDERATION OF RELEASE OF MAKERS OF ORIGINAL NOTES, HELD PROPERLY SUBMITTED TO JURY.—Where payee surrendered to defendant notes executed by defendant as accommodation maker in exchange for defendant's individual notes, *held* that whether new notes were intended as renewals and were therefore without consideration, or whether they were accepted by payee in consideration of release of original makers, was properly submitted to jury as question of fact, regardless of whether notes were merely surrendered to defendant by payee or indorsed by it without recourse.

3. BILLS AND NOTES — INSTRUCTION HELD NOT TO REQUIRE JURY TO FIND EXPRESS AGREEMENT THAT SURRENDER OF ACCOMMODATION NOTES WERE CONSIDERATION FOR NEW NOTES.—Instruction that, if accommodation notes were surrendered by payee in lieu of defendant's individual notes under agreement transferring payee's interest therein, defendant would be liable on new notes, but, if they were mere renewals, defendant would not be liable, *held* not erroneous as requiring jury to find express agreement that original notes should be accepted as consideration for new notes.

4. TRIAL—INSTRUCTION AS TO BURDEN OF PROVING WANT OF CONSIDERATION HELD SUFFICIENT.—Instruction that burden of proving want of consideration for defendant's individual notes, given in lieu of notes executed by defendant as accommodation maker, was on defendant, and that payee made out *prima facie* case by producing notes *held* sufficient on issue of consideration.

5. APPEAL AND ERROR—INSTRUCTION AS TO EFFECT OF ACCOMMODATION MAKER'S INTENTION IN ACCEPTING NOTES FOR WHICH HE GAVE HIS INDIVIDUAL NOTES HELD NOT PREJUDICIAL.—Since mere surrender of notes to accommodation maker does not constitute consideration as matter of law for his individual notes given in lieu thereof, instruction that no greater effect could be attributed to

---

1.   See 6 R. C. L. 653.

such fact if accommodation maker had no intention of keeping original notes, or to regard them as payment for new notes, was not prejudicial.

6. APPEAL AND ERROR—EXCEPTION NEED NOT BE TAKEN TO INSTRUCTION IN ORDER TO CLAIM ERROR.—Exception need not be taken to instruction in order to claim error.

7. APPEAL AND ERROR—TRIAL—INSTRUCTION HELD NOT TO AUTHORIZE JURY TO PASS ON LAW, AND HARMLESS, EVEN IF ERRONEOUS.— Instruction that it was for jury alone to determine facts from evidence to which it should apply law it thought applicable, *held* not to authorize jury to pass on law, in view of instructions as whole, but harmless, if erroneous.

8. BILLS AND NOTES—THAT DEFENDANT'S INDIVIDUAL NOTES WERE GIVEN TO BANK TO DECEIVE BANK EXAMINER HELD NOT PROVED.— Evidence *held* not to show that defendant executed individual notes given to payee bank in lieu of notes executed by him as accommodation maker in order to deceive bank examiner as to bank's assets.

9. BILLS AND NOTES—STATEMENTS OF PAYEE BANK'S VICE-PRESIDENT HELD ADMISSIBLE TO SHOW WANT OF CONSIDERATION FOR DEFENDANT'S INDIVIDUAL NOTES.—Statements of vice-president of payee bank, tending to show that defendant's individual notes given to bank in lieu of notes executed by defendant as accommodation maker were mere renewals, *held* admissible to show want of consideration for new notes.

10. EVIDENCE—PAROL EVIDENCE ADMISSIBLE ON ISSUE OF CONSIDERATION FOR NOTE.—Parol evidence rule does not preclude admission of parol evidence on issue of whether note was supported by consideration.

11. BILLS AND NOTES—WHETHER EXTENSION OF TIME WAS CONSIDERATION FOR RENEWAL NOTES HELD FACT QUESTION FOR JURY.— Whether extension of time on notes on written request of accommodation maker was consideration for new notes executed by him individually in lieu thereof *held* question of fact for jury.

12. TRIAL—ERROR CANNOT BE PREDICATED ON OMISSION TO CHARGE, IN ABSENCE OF REQUEST TO CHARGE.—Trial court is not required to scan evidence so as to present issues raised by pleadings from every possible viewpoint, but, if all issues essential to determination of case are fairly submitted, error cannot be predicated on omission to charge on any phase thereof, in absence of request to charge with respect thereto.

13. BILLS AND NOTES—THAT RENEWAL NOTES EXTENDED TIME OF PAYMENT DID NOT CONSTITUTE SUFFICIENT CONSIDERATION TO MAKE

10.  See 10 R. C. L. 1042.
12.  See 14 R. C. L. 795.

ACCOMMODATION MAKER LIABLE AS ORIGINAL MAKER.—That re-
newal notes, executed by defendant individually in place of notes
executed by him as accommodation maker, extended time of pay-
ment did not constitute sufficient consideration to make defendant
liable as original maker.

---

(1) See 13 C. J., p. 312, n. 67, p. 318, n. 96.    (2) 8 C. J., p. 1064,
n. 79.    (3) 8 C. J., p. 1073, n. 91.    (4) 8 C. J., p. 1076, n. 30.
(5) 4 C. J., p. 1029, n. 30.    (6) 3 C. J., p. 930, n. 66.    (7) 38 Cyc.,
p. 1510, n. 23, p. 1530, n. 9, p. 1779, n. 75, 76.    (8) 8 C. J., p. 1049,
n. 25.    (9) 8 C. J., p. 1025, n. 78.    (10) 22 C. J., p. 1165, n. 77.
(11) 8 C. J., p. 1064, n. 79.    (12) 38 Cyc., p. 1693, n. 55.    (13) 8
C. J., p. 434, n. 7.

APPEAL from a judgment of the Superior Court
of the County of Yuma. Alfred C. Lockwood, Judge.
Affirmed.

Mr. Clement H. Colman and Mr. Le Roy A.
Wright, for Appellant.

Mr. W. F. Timmons, for Appellee.

JONES, Superior Judge.—This action is upon
eight promissory notes from appellee (hereafter
called defendant) to appellant (hereafter called plain-
tiff), to which defendant pleaded want of considera-
tion. The trial was before a jury, which resulted in
a verdict and judgment for the defendant; hence this
appeal.

On March 20, 1919, one Deyo, his wife, and defend-
ant jointly made to plaintiff two notes for $1,000
each, payable one and two years after date. On De-
cember 29, 1920, the defendant alone made to plain-
tiff in lieu of one of the original notes, which with
interest was then due, four notes each for $291.62,
payable respectively in 3, 6, 9, and 12 months, and
thereupon plaintiff surrendered such original note to
defendant. On May 28, 1921, after the second origi-
nal note and the first of December, 1920, series had
become due, the defendant alone made to the plain-
tiff, in lieu of such second original note and the

$291.62 note then also due, five notes, four of them being for $250, and the fifth for $291.62, payable at various periods during 1922; and plaintiff thereupon surrendered to defendant the second original note.

This action was brought on these eight notes. The defendant in support of his plea of no consideration offered evidence to the effect that the notes executed in December, 1920, and May, 1921, were renewals of the two original notes, and that he had joined in such original notes as an accommodation for the plaintiff.

Plaintiff's evidence was to the effect that the December, 1920, and May, 1921, notes were executed without any understanding that they were renewals of the original notes; and that at the time of the execution of the May, 1921, notes plaintiff not only surrendered to the defendant the second original note, as had been done with the first one in December, 1920, but had indorsed it without recourse.

Plaintiff also offered in evidence Exhibit I, which was executed after December, 1920, but before May, 1921, and which is as follows:

"Yuma, Arizona, April 20, 1921.

"To the Officers and Directors of the Yuma National Bank, Yuma, Arizona—Gentlemen: We, the undersigned indorsers of the Deyo notes originally held by your bank, and which have been taken up with new notes made payable to your bank and severally signed by us, said notes being for the sum of $291.64 each and due every ninety days until same have been liquidated, now owing to the very stringency of the times through which the community is passing financially, and feeling that it will work a hardship on most of us as indorsers of this paper to be forced to pay same at maturity, do hereby petition you as officers and directors of the said institution to grant us an additional time in which to make payment of these several notes.

"We are in position to take care of the interest on the same, and will make such payments as we are able to do from time to time, and sincerely ask that,

in view of the above stated facts, as well as the extenuating circumstances under which these notes were given, that you grant us an additional time in making these payments.

"Assuring you of our appreciation of the favor, we are

"Respectfully,
"MARY E. POWER.
"J. M. BALSZ.
"J. HOMER SMITH."

So far as the original notes were concerned it is conceded that they were valid obligations of the plaintiff against the Deyos, and that the defendant joined therein for the accommodation either of the bank, as he claimed, or the Deyos, as the bank claimed. On the issue of accommodation both sides offered considerable evidence, and, as the trial proceeded, this developed into the main contest of the case.

At the time of the execution of the original notes and thereafter the Deyos were very largely indebted to the plaintiff in addition to such notes. The record discloses beyond question that they were then and continued thereafter insolvent. Before December, 1920, they left the country. In December, 1919, the plaintiff wrote off all unsecured obligations it held against the Deyos to acquire the benefit of income tax reductions. So far as any recovery against the Deyos was concerned, there is but one just conclusion supported by the record, and that, in the language of a witness, is that their notes were entirely worthless.

Balsz made no effort to collect the original notes after their surrender to him, and they were accidentally destroyed by fire some time before the trial.

The court charged the jury that the production of the notes in suit raised a presumption that they were valid and upon a sufficient consideration, and that the burden of showing the contrary was on the

defendant. He then charged with respect to the is-
sue of accommodation affecting the original notes,
and proceeded:

"If you will notice, the notes sued on are not the
original notes given by Mr. Balsz. The original notes
given by Mr. Balsz had the names of A. E. Deyo and
Nell Deyo also. The notes sued on in this action
have only the name of Mr. Balsz. You are instructed
in this connection that, if at the time these new notes
were given, the Deyo notes—that is, the original
notes, were indorsed over or surrendered to Mr. Balsz
by the bank with the agreement between the parties—
that is, between Mr. Balsz and the bank, that the bank,
so far as they were concerned, would transfer all
their interest and right of action against the Deyos
to Mr. Balsz, and let him take such action as he
wanted to, and in consideration for such act on the
part of the bank Mr. Balsz was to give his note to
the bank, then, in such case, Mr. Balsz, so far as
these notes were concerned, would no longer be an
accommodation party, but an original maker of his
own note, and these other matters would not be
available to him. He would be bound to pay just
as if he had gone—if he took these Deyo notes from
the bank with the agreement between himself and the
bank that he was to have the Deyo notes with the
right to collect whatever he could from the Deyos,
and the bank surrendered all that right and took his
note alone, then he would be bound, and it would be
no difference if they were worth much or little, if he
knew the Deyos might be insolvent, and that the debt
might be hard to collect; if he took them with full
knowledge of the condition and with the understand-
ing that he was to have them and pay for this new
note, he couldn't complain if he afterwards found he
couldn't collect the Deyo notes. But, on the other
hand, if with the execution—that is, upon the question
of renewal, he had no intention that he would keep
the Deyo notes and pay for his new notes then the
mere fact that the bank may have handed them over
to him would not make him an original maker on
these new notes and he would have the right to set
out these new notes as against the original notes. It

would all depend whether he had taken the Deyo notes as his own property or whether they were just simply handed over to him without any intention of giving him them for new notes.''

Plaintiff did not present any requested instructions. On this appeal plaintiff concedes that upon ample evidence the jury found against it on the issue involving the validity of the original notes and that this court must accept as established the claim of defendant that they were without consideration and void, but plaintiff contends that the notes executed in December, 1920, and May, 1921, are valid subsisting obligations upon which it is entitled to recover.

Plaintiff's chief assignment of error and contention is that the bank's surrender of the old notes as a matter of law constituted consideration for the new ones. This consideration is said to arise from the fact that the effect of the surrender of the old notes was a release of the bank's claim against the Deyos.

This question was passed upon by the Pennsylvania Supreme Court in the case of *Kirkpatrick* v. *Muirhead,* 16 Pa. 117. There William Kirkpatrick, the defendant, and his brother had executed a note to C., who transferred it to Muirhead, the plaintiff. Muirhead presented the note for payment to William Kirkpatrick, who executed two notes signed by himself alone, and exchanged them for the old one. He paid the first of these two notes when it fell due, but later refused to pay the second, and Muirhead brought suit thereon. The defense was that the new notes were a mere renewal of the old one; that the old one was without consideration; and that Muirhead had not been a *bona fide* holder thereof. To this the plaintiff made the same reply as is made here—that the surrender to the defendant of the old note with the signature of the defendant's brother thereon was a detriment to the plaintiff, and constituted consideration. Of this contention the court said:

"Consideration, like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value or convenience and inconvenience, recognized by all of them as the moving cause. That which is a mere fortuitous result flowing accidentally from an arrangement, but in no degree prompting the actors to it, is not to be esteemed a legal consideration."

*In re Dutton's Estate,* 181 Pa. 426, 37 Atl. 582, the above quotation is approved. This is in accordance with the general rule.

In the case of *Fire Insurance Association* v. *Wickham,* 141 U. S. 564, 35 L. Ed. 860, 12 Sup. Ct. Rep. 84 (see, also, Rose's U. S. Notes), the claim was made that prepayment of a part of a demand was consideration for a release of the whole. Said the court:

"That prepayment of part of a claim may be a good consideration for the release of the residue is not disputed; but it is subject to the qualification that nothing can be treated as a consideration that is not intended as such by the parties. Thus in *Philpot* v. *Gruninger,* 81 U. S. (14 Wall.) 570, 577 (20 L. Ed. 743, 744), it is stated that 'nothing is consideration that is not regarded as such by both parties.' To constitute a valid agreement there must be a meeting of minds upon every feature and element of such agreement, of which the consideration is one. The mere presence of some incident to a contract which might under certain circumstances be upheld as a consideration for a promise does not necessarily make it the consideration for the promise in that contract. To give it that effect it must have been offered by one party and accepted by the other as one element of the contract. In *Kilpatrick* [*Kirkpatrick*] v. *Muirhead,* 16 Pa. 117, it was said that:"—(Here follows the quotation appearing above.)

See, also, *Williams* v. *Hasshagen,* 166 Cal. 386, 137 Pac. 9.

This rule is applicable here. The act of the bank in delivering the old note to Balsz was as much open to the explanation that it was merely the return of a renewed note, as he claimed, so that there might not be two of them outstanding, as to the explanation that it constituted consideration for the new note, as claimed by the bank.

The court therefore very properly required the jury to determine from all the facts whether it was intended by the parties that the new note should be accepted by the bank in consideration of the release of its claim against the Deyos.

There was some scant evidence that the second original note was indorsed by the bank without recourse, and then delivered to the defendant, and plaintiff insists that such constituted consideration, even if mere surrender would not. Defendant denied having any knowledge of such indorsement. We have carefully considered this contention, and are of opinion that, in the light of the facts of this case, the rule announced above is applicable, whether the notes were indorsed or not. In either event it was, in our opinion, for the jury to say whether the parties understood the delivery of the old notes to the defendant to be consideration for the new ones, and that question was submitted to the jury. No doubt in many cases the conclusion that consideration existed arises irresistibly from the facts, but this case is not of that character.

It is next contended that the court by the charge above quoted erroneously required evidence of an express agreement between the parties that the old notes should be accepted as consideration. We do not so regard the court's instructions. The jury was at liberty under the charge to consider the entire evidence and find therefrom that the agreement was

made, whether it arose from express language or by implication.

It was also urged that the court by the language above quoted erroneously placed upon the appellant the burden of proving the existence of an agreement that the new notes should be given in consideration of the old ones. The court, however, elsewhere in the instructions expressly charged the jury that the burden of showing want of consideration was on the defendant. The court stated that the plaintiff had made out a *prima facie* case by the production of the notes, and also that the burden of proving any excuses was on the defendant. This satisfied the requirements of the case.

Counsel particularly attack that part of the above instruction reading:

"But, on the other hand, if with the execution—that is, upon the question of renewal—he had no intention that he would keep the Deyo notes and pay for his new notes, then the mere fact that the bank may have handed them over to him would not make him an original maker on these new notes, and he would have the right to set out these new notes as against the original notes."

That is immediately followed by the following language:

"It would all depend whether he had taken the Deyo notes as his own property or whether they were just simply handed over to him without any intention of giving him them for new notes."

As we have said, the court was right in submitting to the jury the question whether the new notes were given in consideration of the bank's release of its claim against the Deyos. Merely handing the old notes to Balsz did not under the authorities constitute consideration as a matter of law, whether indorsed without recourse or not. This being so, it was not prejudicial to add that no greater effect could be at-

tributed to such act if Balsz had no intention to keep the old notes or regard them as payment for the new ones.

Counsel isolate from the charge the two following sentences, and assign error.

"It is for you, and you alone, to elect from the evidence, but, after you have decided on the real facts, then you will take the general instructions that I have given you that fit the particular facts as you find them, and will render your verdict accordingly."

"After you have made up your mind, using that kind of scale, you will decide the whole case, as I have indicated, on the facts—take the law that you think applies to the facts, and will then render your verdict."

It is said the above language authorized the jury to decide the law as well as the facts. The jury was required to pass upon several issues, some determinative of the entire case, and we think the first sentence above quoted entirely unobjectionable. As to the latter, we cannot agree that the jury could have accepted the charge as authority to pass upon the law. Under our system exceptions need not be taken to a charge in order to claim error, and it is not surprising that a trial court, often, as in this case, entirely unaided by suggested instructions or criticisms of those given, falls into what are nothing more than mere inaccuracies of expression, which, standing alone, give color to claim of error. It is a salutary rule therefore, which gauges the instructions as a whole of which each is considered a part. So considered, the language here discussed was harmless, if erroneous.

We find nothing in the charge of the court to sustain the assignments that the court commented on the facts, or so framed the instructions as to present the defendant's case in a favorable light, or that he in-

dulged in any inapplicable statements of general law in a manner prejudicial to the appellant.

Counsel suggest, rather than expressly contend that Balsz's testimony, if true, discloses that a fraud was committed in the execution of the new notes, as they were to be used as fictitious assets to deceive the bank examiner, and that therefore he should not be heard to defend against them. It is true that Balsz did testify that when first approached to renew the notes the bank's active vice-president, who had charge of the matter, asked him to execute the new notes, "as it would look better to the bank examiner," but he testified that he refused. Later he says that he consented to sign the new notes as renewals only for the old ones. The bank examiner visited the bank in November, 1920, and then became informed of the Balsz notes, and made certain investigations with respect thereto, so that any arrangement made in the December following, when the first of the new notes were executed, could not in the nature of things deceive the bank examiner. Under this state of facts it is unnecessary to consider the interesting cases which counsel cite and many others that bear on the question of the right to enforce as well as defend against fictitious assets designed to deceive others.

But counsel argue that the vice-president had no authority to make any statement from which it might be inferred that the new notes were to be regarded as mere renewals of the old ones. If, indeed, the new notes were executed for a consideration, the contention would be a serious one, but such statements were offered to show that there was no consideration. We have heretofore shown that the defendant was entitled to have the jury pass upon that issue. That right would indeed be barren if the defendant were limited in his proof to such statements only as were authorized by the directors at a meeting thereof.

Appellant argues that the testimony of the conversations between the bank's vice-president and Balsz on the occasion of the execution of the new notes tended to vary the terms thereof, thus violating the parol evidence rule. But the parol evidence rule certainly does not exclude evidence having a legitimate bearing on the question of consideration, without which there is no contract to vary. The rule is directed to evidence that varies a valid instrument—not to evidence that for one reason or another is relevant and proper on the question of the validity or existence of the instrument. *Fidelity Title Guaranty Co.* v. *Ruby,* 16 Ariz. 75, 141 Pac. 117.

The contention is urged that "the transactions surrounding the execution of these five notes (those executed May 28, 1921), and the reasons for their execution are merged into" Exhibit I, quoted above. It was offered in evidence generally, and was of probative value on the question of consideration for the five notes executed thereafter, as it tended to show that these notes were executed in consideration of an extension of time, and it was also relevant on the issue whether Balsz accommodated the bank or the Deyos in signing the original notes. Exhibit I had been prepared by the bank, and defendant testified it was submitted to him for his signature, with the statement that it was necessary to keep the records of the bank in proper shape. The question, therefore, whether the granting of this request was the consideration for the new notes was one of fact for the jury. The court submitted the issue of consideration to the jury on all the evidence, and, if the plaintiff desired the court specially to charge the jury that the new notes were valid if they were accepted by the bank as the grant of an extension of time, pursuant to Balsz's letter (on which legal question we make no decision) it should have made a request therefor. We do not think a trial court is required to scan the

evidence so as to present the issues raised by the pleadings from every possible viewpoint, and that, if all the issues essential to a determination of the case are fairly submitted, no one may complain that any particular phase of any one thereof was omitted in the absence of a requested instruction with respect thereto. *Southwest Cotton Co.* v. *Ryan*, 22 Ariz. 520, 199 Pac. 124.

Under the findings of the jury it must be accepted as established that the new notes were executed without any consideration independent of that of the original notes, unless the fact that they were renewals and amounted to an extension of the time of payment constitutes sufficient consideration. This question has been answered by this court in the negative. *Hurley* v. *Wilkey*, 18 Ariz. 45, 156 Pac. 83. See, also, *Pacific Rys. Adv. Co.* v. *Carr*, 29 Cal. App. 722, 157 Pac. 529.

We might add that no claim of estoppel or that the renewals effected a compromise was made, and those questions must not be taken as considered or passed upon.

We perceive no substantial error in this record. The court below fairly submitted to the jury all the issues of fact which were raised by the pleadings or presented by counsel. They found that the defendant joined in the old notes for the accommodation of the bank, and that the new notes were merely renewals of the old ones without independent consideration. The evidence was ample to support the jury's findings.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.

LOCKWOOD, J., having tried the case in the lower court was disqualified, and Hon. GERALD JONES, Judge of the Superior Court of Pima County, was called to sit in his stead.