## Kirkpatrick *versus* Muirhead.

1. In an action on a negotiable note brought by the payee against the drawer, the defendant may prove that the note in suit was given with another note, in lieu of a former note, which with other notes had been given by the drawer and another who was his partner, to another firm, for the purchase of certain personal property, and the lease of real estate, and that a portion of the personal property to a greater amount than the note in suit, had never been received by the purchasers, through default of the sellers, whereby there was a failure of consideration; and that the *original notes* had been transferred by the payees to the payee of the note in suit, not in the usual course of business, but merely as *collateral security* against certain liabilities incurred by the holder for the payees, no new consideration passing between the holder and payees of the original notes at the time of the transfer.

2. The circumstance that the suit upon the note had been tried several times before, and that the defence made in this suit was not then made, and that the note in suit had been given after a knowledge by the maker of the failure of consideration, will not preclude the defence, if the silence of the maker as to the failure of consideration did not mislead the holder, or unless the latter relinquished some advantages of which otherwise he might have availed himself, evidence being offered that the drawer, at the time of the giving of the new note, supposed that the transfer of the original note to the holder was in due course and for a valuable consideration.

3. Consideration, like every other part of a contract, must be the result of *agreement;* and the circumstance that the new note was not signed by both of the parties to the original note, (one being accidentally absent,) and that it was payable at a longer period than the original note, will not preclude the defence, the old note having been split into two, and further time being given, merely for convenience, and not because of any new consideration contemplated by the parties, the release of the other party not inducing the execution of the new note; but if this hypothesis as to time and party were *unfounded,* it was not for the court to say so; whether there was any new consideration leading to the execution of the new note sued, was a question of fact for the jury.

4. The party whose name was omitted in taking the new note, being released by the defendant, the maker of the note in suit was a competent witness in his favor, to prove a failure of consideration of the original notes, partial or total, after the original notes reached the plaintiff's hands, and that the note in suit was given for one of them.

5. The testimony of one of the payees of the original notes, given on a former trial of this case on the new note, was admissible on the part of the defendant to prove the consideration of the transfer to the plaintiff below of the original notes, the object not being to impeach the original notes; and it was not a valid objection to this testimony, that the jury might infer from other portions of the same testimony that the first notes were accepted as payment of preexistent debts.

6. The inventory of the property for the purchase of which the former notes were given, was evidence, if the fact of its containing such an enumeration was established.

ERROR to the Common Pleas of *Lancaster county*.

This was an action of debt on a promissory note, brought by William Muirhead against William Kirkpatrick. The note was as follows:—

[Kirkpatrick *v.* Muirhead.]

11 March 1842, sixty days after date, I promise to pay to William Muirhead or order, at the Lancaster Bank, $186.22, without defalcation, value received.

WILLIAM KIRKPATRICK.

The case had been tried in December 1842, when verdict was rendered for defendant. The judgment was reversed. Tried again in March 1844, and verdict rendered for defendant. The judgment was reversed in May 1846. In 1848, again tried and verdict rendered for defendant; a new trial was granted. The pleas were payment, and payment with leave.

On the part of the plaintiff, the note was given in evidence.

It was alleged on the part of defendant, that the note in suit was given for the balance of a negotiable note, for $500, given by William Kirkpatrick and Ephraim Kirkpatrick to Jonathan Muirhead and John M. Capron, doing business under the firm of J. M. Capron & Co., dated June 1, 1839.

The defence set up by defendant was as follows:—

William Kirkpatrick purchased of Capron & Co. certain machine-shops, threshing-machines and castings, some of them being at the time of purchase at the foundry of Darling & Co., the manufacturers in Reading. After they were transferred to the plaintiff, he exchanged them for negotiable notes, amounting in all to $9047.40. The note of $500 above mentioned was the last of them, the others having all been paid. The following notice of special matter showed the defence:—

Under the pleadings in this case, defendant will give in evidence that the consideration of the note on which this suit is founded, was another note, given by William and Ephraim Kirkpatrick, for the purchase of certain personal property, and the lease of certain real property in the counties of Lehigh, Northampton, and Berks, from John M. Capron & Co. That said notes had been transferred to plaintiff, to secure him for certain liabilities that he had incurred for said Capron & Co., or some of said firm. That the consideration of said notes failed to a much larger amount than this note, which is all that remains unpaid of said notes. That among the articles sold, and which were to have been delivered, were 10 sets of castings, 7720 lbs. at 4½ cts., amounting to......... $347.40

Fitting up, 450 cts............................................. 45.00

Patterns 150 cts............................................ 150.40

——————<br>$542.40

That said articles never were delivered to defendant, but were lost to him. That said Capron & Co. were to have paid the rent of a shop at Reading, to William Darling, Esq., amounting to $36.41, which defendant was compelled to pay. The said defendant was obliged to pay to William Darling, Esq., $87.93 for articles to com-

[Kirkpatrick *v.* Muirhead.]

plete the goods purchased as aforesaid from said Capron & Co., and which they by their contract were bound to pay or furnish.

On the trial of the cause, defendant called E. Kirkpatrick as a witness. He was objected to on the ground of interest. Defendant produced a release from William Kirkpatrick, defendant, to E. Kirkpatrick, for all cause for contribution and liability on account of any of the notes given for the purchase of the property in question; and especially on account of the note referred to, of the 17th of June 1839, and all liabilities in this suit. Witness rejected and excepted to by the defendant.

Defendant then proved by C. Anthony, that the notes of Kirkpatrick were transferred to plaintiff by Capron & Co., within ten days of their date, *as collateral security* for several notes endorsed by plaintiff for Capron & Co. in various banks. He also proved by George W. Houser, that the note in suit was given for the balance of one of the notes thus pledged.

Defendant then offered the inventory of the goods purchased, (for which the notes were given,) and offered to prove that the articles specified in the notice of special matter were never received by Kirkpatrick, but were retained by the makers (in whose shop they were) because they had not been paid for by Capron & Co. The court rejected the evidence, and defendant excepted.

Defendant offered to read from the notes of Judge HAYES, so much of Jonathan Muirhead's testimony, taken on a former trial of this case, as showed what the notes given by the Messrs. Kirkpatricks to Capron and Muirhead were transferred for, and when transferred, and that the note in suit was given for one of the above-stated notes, and that the transfer was not made in the regular course of business. This was offer 8.

And defendant offered to prove the same facts by Ephraim Kirkpatrick.

This evidence was offered for the purpose of introducing the defence already offered and specified in the previous bills of exception. This constituted the whole defence to the note.

The testimony of Muirhead was objected to, on part of plaintiff, because he is one of the firm of J. M. Capron & Co., and one of the payees of the original note, and an endorser of the same. Evidence rejected, and exception on part of defendant.

Defendant offered to prove that he did not know that the notes given by him and Ephraim Kirkpatrick were endorsed to William Muirhead for security merely, but supposed they were actually negotiable for value, in the regular course of business, until after he had given the note in suit; and that he had taken counsel to know whether, if the fact were as he supposed, he could set off failure of consideration as a defence, and was advised by the counsel that he could not. This advice was obtained shortly after the notes were

[Kirkpatrick v. Muirhead.]

transferred to William Muirhead; and then renewed the ˙offer of the evidence just excluded. This was offer 9.

PER CURIAM.—There is no offer to prove that William Muirhead concealed from defendant the consideration, or that any fraud was practised upon defendant by plaintiff—defendant was bound to make diligent inquiry; he knew of the partial failure of consideration now complained of, when he gave the note in suit, obtaining the release of his joint payor and obtaining further time of payment. The defence as against plaintiff, if made out as offered, is destitute of equity. The testimony now offered is rejected.

Defendant excepted.

June 4, 1850, verdict for plaintiff for $276.28.

It ·was assigned for error:—1. The court erred in rejecting E. Kirkpatrick as a witness. 2. Also in rejecting inventory and proof in second bill of exceptions. 3. Also in rejecting Jonathan Muirhead to prove under what circumstances the notes were assigned to plaintiff, and to show that it was not in the regular course of business nor for value. 4. Also for rejecting offer 8. 5. Also for rejecting offer 9.

The case was argued by *Stevens,* for plaintiff in error.—The court rejected the principal part of the defendant's evidence, on the ground that if all was proved that was offered, it would form no defence to the note in suit. It seems the court acted on the following reason :

1. The original notes being negotiable and endorsed before due, no defence could have been set up to them.

2. The note in suit being given for one of the original notes after the failure of consideration was known to defendant, no defence could be made to it.

When a negotiable note is transferred as collateral security for liabilities already incurred, and not for value in the regular course of business, it is subject to the same defence in the hands of the endorsee as it would have been in the hands of the payee : 6 *Ser. & R.* 537, Harrisburg Bank *v.* Myer; *Chitty on Bills* 68–9 ; 5 *Johns. C. R.* 56; *Johns. C. R.* 637, Bay *v.* Coddington ; 3 *Kent* 79, 80, 81; 3 *B. & Cres.* 154, Gill *v.* Corbit ; 13 *Wend.* 570, Rant *v.* French ; *id.* 605.

The same defence lies to the new note as to the old one for which it was given : 15 *Mass.* 92, 96, Bridge et al. *v.* Hubard.

Defendant offered to show that he did not know what was the consideration of the transfer of the notes to plaintiff, and supposed it to have been for value, in the regular course of business. But as soon as he found that the transfer was only as collateral security, he refused to pay. He gave the note in ignorance of the facts.

The suggestion that further time was a part of the consideration

[Kirkpatrick *v.* Muirhead.]

had no foundation in fact.   Nor was the note given to settle a dispute.

As to first bill of exceptions.   Ephraim Kirkpatrick was a competent witness.   He never was a party to the suit or to the note. The old note was cancelled, and he was released from all liability.

Second bill of exceptions.   Jonathan Muirhead was a competent witness to prove what the transfer to plaintiffs was for, and that it was not in the regular course of business, and the time of endorsement.

"A party to a negotiable instrument actually negotiated may prove facts subsequent to its creation, yet he cannot *invalidate* it in its original consideration:" 9 *Ser. & R.* 236, Bank *v.* Walker; 10 *John. R.* 231; 11 *id.* 128; 2 *Phil. Est.* 31, 223, and the notes thereto; 11 *Pick.* 418, Sprig *v.* Louett, to prove the time of endorsement; *Chit. on Bills* 674.

Besides, it had been already proved, by Conrad Anthony, that the notes were transferred to plaintiff only as collaterals; and it has nowhere been proved that he was damnified.   It was also proved that the notes originally transferred to plaintiff were not negotiable, and that he afterwards got defendant to give negotiable notes for them.

*Frazer*, for Muirhead, defendant.—Kirkpatrick was not a competent witness; he was one of the drawers of the old note, and although discharged by the new note, he was liable to defendant in the suit for contribution, and the release at law could not avail: 7 *W. & Ser.* 44, Reed *v.* Patterson; 8 *id.* 272; 5 *id.* 509, Post *v.* Avery; 5 *Barr* 395.

As to third error.—Muirhead was incompetent on the ground of policy.   The offer was to show what took place *at the time the note was negotiated*, not after: 4 *W. & Ser.* 287, Parke *v.* Smith; 5 *Barr* 52, 53, Griffen *v.* Howell.

Fourth error.—The defence being an equitable one, defendant must show that he is entitled to equity.   Plaintiff was a *bona fide* holder for value of the original note; the note in suit being in consideration of further time and a release of Ephraim Kirkpatrick from the former note, and no allegation of failure of consideration being made for nine years, the note in suit being a new contract, and the old note given up, takes from defendant all equity.

The opinion of the court was delivered May 19, by

BELL, J.—On the trial of this action, brought by the plaintiff below as payee of a promissory note drawn by the defendant below, the latter offered to prove, as a full defence, that the note in question was given in lieu of another note previously drawn by William and Ephraim Kirkpatrick in favor of Capron & Co., and delivered to them, with other notes, in payment of certain personal property,

and the lease of certain real estate, purchased by the defendant for the drawees; that a portion of the personal chattels so purchased, to an amount greater in value than the sum called for by the note in suit, was never received by the purchasers, through the default of the sellers, whereby there was a total failure of consideration, and that the original notes were transferred by Capron & Co. to the plaintiff, not in the usual course of business, but simply as collateral security against certain liabilities incurred by him for the firm.

By the evidence given, or proposed to be given, it appeared that in the year 1840 William Kirkpatrick, or he with his brother Ephraim Kirkpatrick, purchased from Capron & Co., (of which firm Jonathan Muirhead was a partner,) certain machine-shops, with castings, materials, and patterns, necessary in the construction of machines, in payment of which the Kirkpatricks drew and delivered to the vendors their promissory notes for between seven and eight thousand dollars. Very shortly after this transaction, Capron & Co., who were in failing circumstances, transferred these notes to third persons, one of whom was the plaintiff below, who received two of the securities, as the defendant below alleges, merely as security for a pre-existent debt, or to protect him against certain prospective and contingent liabilities he had assumed in favor of the endorsers. One of the notes thus held being unpaid, it was, in the year 1842, on the proposition of the defendant below, broken into two notes, drawn by William Kirkpatrick alone, in favor of the plaintiff below, payable in thirty and sixty days. The reason given why Ephraim Kirkpatrick did not join in them, was his absence from home at the time; and this appears to have been accepted as sufficient by the plaintiff's agent. No objection was then made by Kirkpatrick to the original note, nor was any thing said about the defence now set up. As an excuse for this omission, evidence was offered to show that the defendant, until very recently, was under the impression the plaintiff had received the original notes in due course, and for a valuable consideration, and having, before the present note was given, consulted counsel, was instructed that if such was the fact, the defence now attempted would be unavailing, from whence he would deduce the reason for his silence in 1842.

One of the notes last given was paid, but the other remaining unsatisfied at maturity, the present suit was brought upon it shortly after it fell due. The action has been four times tried. On the first three investigations the defence was made to rest upon an averred set-off, and it was not until this failed, and upon the last trial in 1849, the objection now relied on was set up.

The Court of Common Pleas rejected the evidence offered to establish the facts I have briefly recapitulated, on several grounds. One of these was that, if made out, they would not constitute an

available defence against the plaintiff's claim. In this conclusion we cannot concur.

Whatever contrariety of opinion may have existed elsewhere on this subject, it is the undoubted law of Pennsylvania that, though the holder of a negotiable instrument received in *payment* of a pre-existing debt, before maturity, cannot be subjected to equities which might have furnished a defence as between the original parties, and of which he had no notice, yet, if the paper be taken as *collateral security merely,* for the payment of a debt, or for protection against previously assumed liabilities, the defendant may aver any ground of defence which would have been competent between antecedent parties to the bill or note ; unless, indeed, there was some new and distinct consideration moving between the parties to the transfer ; such as giving up some other available security ; releasing another party, drawer or endorser ; conceding further time for payment, and the like : Petrie *v.* Clark, 11 *Ser. & R.* 377 ; Walker *v.* Geissee, 4 *Whar.* 258 ; Depeau *v.* Waddington, 6 *Whar.* 220. In all these cases, it is laid down that the transfer of mercantile paper as collateral security does not constitute the transferree a holder for a *valuable* consideration. The doctrine here proclaimed is in strict accordance with the decisions of several of our sister States. Thus in the leading case of Bay *v.* Coddington, 5 *Johns. Ch. R.* 54, it was ruled that the *bona fide* holder of negotiable paper, who has received it for a *valuable* consideration, without notice or reasonable ground to suspect a defect in the title of the person from whom it was taken in the usual course of business or trade, is entitled to full protection. But where he has taken it for an antecedent debt, either as nominal payment or as security for payment, without giving up any security he previously had, paying any money, or affording some new consideration, he is not a holder for *value*, who may recover, in despite of fraud practised by the person putting the note in circulation, or the failure of the consideration from which it originally sprang. "It is," said Chancellor KENT, who decided the cause, "the credit given for the paper, and the consideration *bona fide* paid on receiving it, that entitle the holder, on grounds of commercial policy, to extraordinary protection, even in cases of the most palpable fraud." In the same case, on appeal, 20 *Johns. Ch. R.* 637, WOODWORTH, J., observed, that "the reason of the rule affording protection would seem to be founded in the loss incurred by an innocent holder by giving credit to the paper, and having paid a fair equivalent for it." And he stated the true question to be, has he paid value for the note transferred, or made any new engagements as the consideration of the transfer ? So in Kimbro *v.* Lytle, 10 *Yerger* 428, it was determined that, to prevent a note from being subjected to previous equities, it must be taken in due course of trade, that is, by one who has given his

[*Kirkpatrick v.* Muirhead.]

money for it, his goods, or his credit, at the time of receiving it, or who, then, on account of it, sustained some loss, or incurred some liability.    Nichol *v.* Bate, in the same court, 10 *Yerger* 429, is to the same effect.    There the note sued had been taken in lieu and by way of satisfaction of a previous note with a distinct endorser, which was given up at the time, and the learned judge who delivered the opinion, very clearly pointed out the distinction between such a case and that presented in Bay *v.* Coddington, where the paper sued on had been given to the holder as collateral security only, for liabilities incurred by him as endorser.    This was followed by Wormley *v.* Lowry, 1 *Humph.* (*Tenn.*) *R.* 468, where the broad proposition was laid down, that a bill assigned before it fell due, for a pre-existing debt, is not an assignment within the meaning of the words " due course of trade," and it is, therefore, subject to be defeated in the hands of the assignee, upon proof of failure of consideration.    In both these latter instances, it was particularly noticed, that the admissibility of the defence turned upon the question whether, by permitting it, the holder of the transferred securities would be placed in a worse or different situation than he would have occupied had he never received them. Where, said the court, one receives a note for a pre-existing debt, due from him only who assigns the note, he parts with nothing ; he is in the same situation after a successful defence by the maker, as before he took the note.

I am not unaware of the apparent conflict of opinion, on this subject, between the Supreme Court of the United States, in Swift *v.* Tyson, 16 *Peters's R.* 16, and the courts of New York, in Bay *v.* Coddington, and other adjudications, the last of which is Stalker *v.* McDonald, where all the prior determinations are collected and reviewed in an elaborate and very able opinion pronounced by Chancellor WALWORTH, 6 *Hill* 93.    That conflict does not, however, touch the precise question before us, for though Mr. Justice STORY, who delivered the judgment of the Federal tribunal, does intimate that a note endorsed simply as a collateral, is not open, in the hands of a stranger, to prior equities, the point for decision was, whether a negotiable instrument, received in *payment* of a pre-existing debt, is so open?    A query, it was thought, the New York courts had answered affirmatively.    Perhaps the seeming discrepancy is satisfactorily explained by Mr. Justice SHEPLEY, in Holmes *v.* Smyth, 4 *Shep. Maine R.* 177, as originating in the New York rule, which is said to be the English also, that a bill or note, whether of the debtor or a third person, taken for a prior debt, is not considered as payment, unless expressly so agreed ; while in Maine and some other of the States the rule is different. Under this difference it is pointed out that, while in Maine and elsewhere the loss of the note taken in exchange would, consequently, occasion the loss of the whole debt, in New York it

[Kirkpatrick *v.* Muirhead.]

would put the party only where he was before; a difference of result which, as we have seen, works the whole distinction between a *bona fide* transfer for a *valuable* consideration, and such a transfer for a *valid* consideration only. Whether these suggestions are competent to reconcile the seeming jar, I need not stop to inquire, since, for our present purpose, it is enough to know that our decisions have recognised the difference between payment and security only; ruling that the former protects the *bona fide* holder against all defences founded in fraud or latent equities practised upon or existing between the original parties; while the latter leaves the door open to every inquiry which would have been pertinent had there been no transfer of the paper.

Conceding then as proved what the defendant below offered to prove, there can be no hesitancy in saying that were this action founded on the negotiable notes first transferred to the plaintiff, the defence relied on must have been available, since its success would leave the plaintiff in the same plight he was before he accepted the collateral security. The proposition is this:—The plaintiff having incurred certain liabilities as endorser of the paper of Capron & Co., the latter being in failing circumstances and unable to meet their engagements, transferred to the former one or more of the notes just before drawn by the Kirkpatricks in favor of the firm, as a security against any eventual loss that might overtake the plaintiff in consequence of his endorsements. Now, a failure of this security would leave him precisely in the position he occupied before the transfer; and consequently, in reference to the notes first transferred, he is to be regarded as a holder for a *valid*, and not a *valuable* consideration.

Did the subsequent transaction, which resulted in the creation of the note now sued, change this position, and, as a consequence, invest the holder with rights and remedies not before possessed? The court below seems to have so thought, for as one reason for rejecting the proffered proof, it is said the facts averred, if proved, would constitute no defence against the plaintiff, after giving him a new note, *upon a new consideration as to time and parties*, three years after knowledge of the alleged failure of the consideration. If, otherwise, the proposed defence is sustainable, the mere lapse of time before averring it, and even the making of a new note in silence, would not operate to destroy it, unless the *laches* misled the plaintiff into the assumption of fresh liabilities, or induced him to relinquish some advantage he might otherwise have availed himself of. No feature of this kind appears to characterize the case. Were it so, the neglect to inform the holder of the failure of consideration might possibly compromise the defence. But, in the absence of such an element, I cannot concede it was the duty of the drawer to inform himself of the terms of the transfer, or that he was culpably remiss in entertaining, without special inquiry, the

L 2

impression that his notes had been passed to the plaintiff for a valuable consideration and in the due course of business. Certainly, up to the time when the two last notes were given, his silence will not operate to stop his averment of failure of consideration; and I do not perceive how the mere fact of his giving new notes should work such an effect, or why this should preclude him from showing the reason of his silence, as explanatory of what might otherwise be a suspicious circumstance. Nor will his neglect to avail himself of his present defence until that first set up failed him detract from its vigor. One having several answers to a legal claim, may choose which he will first aver, and can only be precluded from resorting to others by a final verdict. Here, the prior verdicts were set aside, and consequently, upon the last trial the field of attack and defence was as open and unincumbered to both parties as though no prior jury had passed upon the dispute.

But a more serious reason for the rejection of the evidence is found in the assumption that the last notes were given upon a new consideration as to time and parties. If this were so, it would be decisive. I have already intimated that where the transferred bill or note is taken upon a distinct consideration, it is within the general rule of protection; and certainly the extension of the time of payment, or the release of an endorser or other party before bound might constitute such a consideration. But upon the case as it is now presented, I have failed to perceive any such. Consideration, like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value or convenience and inconvenience, recognised by all of them as the moving cause. That which is a mere fortuitous result flowing accidentally from an arrangement, but in no degree prompting the actors to it, is not to be esteemed a legal consideration. Now, in the instance before us, it is true that when Houser, as the agent of the plaintiff, called on William Kirkpatrick, the latter complained he was not ready to pay, and proposed, *if he could have more time*, to divide the note then in Houser's possession into two notes, and it was accordingly so done. But it is nowhere said, or hinted, that the extension of the time of payment, was the consideration which influenced Kirkpatrick to give, or Houser, as representing the plaintiff, to accept the new notes. Indeed, it is difficult, under the circumstances, to entertain any such belief. The plaintiff could derive no advantage from taking new notes, unless he intended to negotiate them; more especially as the name of Ephraim Kirkpatrick was omitted, and time could as well have been given on the old note as upon the new. Looking to the facts developed, I should incline to say the old note was split into two merely for the convenience of payment, and not because of a new consideration contemplated by the parties. As to the omission of Ephraim Kirkpatrick as one of the drawers,

[Kirkpatrick v. Muirhead.]

it certainly did not enter into their imagination that release of his prior liability induced, in the slightest degree, the execution of the new notes. William, from the beginning, appears to have been the principal party, and the one looked to for payment. On the negotiation between him and Houser, not a word was said about releasing his brother Ephraim, nor does it appear to have been considered as of any importance whether he joined in the new notes or not. All said upon the subject was, that if Ephraim was at home, he would put his name to the paper. His absence seems to have been accepted without comment, as a sufficient reason why he did not, and no proposition was submitted for preparing the notes with reference to his joining in them at some other time. In short, Houser was profoundly indifferent as to Ephraim becoming a party, and the transaction was finally concluded as though he never had been. At least it so appears to me. But if the hypothesis I have indulged, as to time and party, be entirely unfounded, it was not for the court below to say so. Whether there was a new consideration leading to the execution of the note sued, was a question of fact for the jury. By altogether excluding the offered evidence, the court precluded the jury assuming of itself to determine the fact. In this, a mistake was committed.

There is yet, however, another objection urged against the admissibility of the proposed evidence. The witnesses called to prove the facts to which reference has been made, were Ephraim Kirkpatrick and Jonathan Muirhead one of the firm of Capron & Co., and, as such, an endorser of the note in question. The former of these was first objected to on the ground of interest, but he was released at the bar. It was insisted that, notwithstanding this, he remained incompetent, either under the doctrine of Post v. Avery, 5 W. & Ser. 509 ; Read v. Patterson, 7 W. & Ser. 44, and the subsequent cases of that class ; or, as a party to the note, excluded from impeaching it on grounds of policy. But neither of these grounds of objection are tenable. The rule established by the cases just cited is applicable only to assignors of *choses in action*, called to assist in their recovery by their oaths. It was so applied to the very witness adduced on a former trial of this cause to prove an alleged set-off: 2 Barr 225 ; but his present relation to the contest is entirely different. It is unnecessary to say more on this point, after the repeated reviews this rule of evidence has recently been subjected to.

As to the remaining objection, it might be sufficient to say the proposed witness is not a party to the note in suit. He was purposely omitted as such, and it may therefore admit of strong doubt, whether, for any purpose, he can be so treated. If, however, it be conceded the last notes were emanations of the first, and so connected with them that Ephraim's original relation to them must be considered as still subsisting, he will stand in the same category as

Jonathan Muirhead, the other proposed witness, and subject to the same objection. We may, therefore, conveniently consider as one the exceptions taken to the admission of each of them.

Though, in a great measure, departed from in England, the rule of policy broached in Walton *v.* Shelley, has been adhered to in Pennsylvania, where the contest is in reference to mercantile paper. That rule prohibits a party to a negotiable instrument, actually negotiated, from impeaching it as a witness, by showing facts destructive of its validity which had place at its inception. The law says, one who assists to give currency to negotiable security is not afterward receivable to prove that it is not, in truth, what it purports to be on its face, or to show fraud or other defect in its origin. Nor will he be permitted to remove a preliminary difficulty to make way for his evidence in chief; as, for instance, by testifying that one apparently a *bona fide* endorser is, in fact, an original party to the paper, or that he paid no value for it; for, say the cases, if he could thus clear the way for his evidence attacking the note itself, he might as well be admitted to swear in chief at once, since both species of proof. are equally within the prohibitory policy. While a primary objection remains to his competency unremoved, he cannot be permitted to open his mouth. Following prior cases, so much was determined in Bank of Montgomery *v.* Walker, 9 *Ser. & R.* 236, and Griffith *v.* Reford, 1 *Rawle* 296. But admitting the validity of the transfer, there is no rule which closes the mouth of a party from stating facts subsequent to the date of the note, tending to discharge it or to destroy the title of the holder. Thus in Woodhull *v.* Holmes, 10 *Johns. Rep.* 231, it was ruled the endorser of a note is a good witness to prove the note was fraudulently put in circulation by an agent to whom it was delivered to be discounted, but who, instead, put it into the hands of a broker; " for," said the court, " though a party cannot be called to invalidate the note in its inception or creation, by showing force or fraud, or that the consideration was corrupt or illegal, he may be called to show that after it was regularly drawn and endorsed and delivered to a third person, for a lawful purpose, and consistent with the validity of the note, that person deceived them, and fraudulently circulated the note." So in White *v.* Robbing, 11 *Johns. Rep.* 128, an endorser was admitted to prove payment of a note before its transfer. In Gilpin *v.* Howell, 5 *Barr* 52, a party to a note was received to show a subsequent failure of consideration, upon the broad ground that he may prove any subsequent facts subversive of the holder's right to recover, which do not touch its original validity. An examination of the numerous cases cited for the defendant in error, will manifest that in every case where the witness's mouth has been closed, the proposition was to impeach the instrument in its concoction, or, by attacking the propriety of the transfer, to open

[Kirkpatrick *v.* Muirhead.]

the way for such an impeachment. But nothing of this kind was offered here. The validity of the original endorsement to the plaintiff was fully conceded, together with the entire effectiveness of the original notes as securities at their inception. Making this concession, the defendant proposed nothing more than to show a subsequent failure of consideration, partial or total, after the notes reached the plaintiff's hands. Any party to the note, having no interest in the issue, was competent for this purpose.

The defendant had a right, too, to introduce so much of Jonathan Muirhead's former testimony as showed the consideration of the transfer to the plaintiff, simply because the object was not to destroy the original notes; and it was no objection to this course that the jury might infer from other portions of the same testimony that the first notes were accepted as payment of pre-existent debts.

The paper-book states the offer of the inventory and the proof connected with it, so obscurely, it is difficult to say whether or not it was properly rejected. If it contained an enumeration of the goods for the purchase of which the first notes were given, certainly it was evidence. But some proof must be given of this. It is said there was some. Probably no difficulty will be experienced on this head upon another trial.

Judgment reversed and a *venire de novo* awarded.