800 P.2d 26

**SUN WORLD CORPORATION, a Texas Corporation, Plaintiff–Appellant, Cross Appellee,**

v.

**CITY OF PHOENIX, a Municipal Corporation, Defendant–Appellee, Cross Appellant.**

**No. 1 CA–TX 89–005.**

Court of Appeals of Arizona, Division 1, Department T.

Oct. 23, 1990.

Busby & Busby, Ltd. by A. Jerry Busby, Kathryn L. Busby, Phoenix, for plaintiff-appellant, cross-appellee.

Roderick G. McDougall, City Atty. by Sandra K. McGee, Asst. City Atty., Phoenix, for defendant-appellee, cross-appellant.

## OPINION

GERBER, Judge.

Sun World Corporation appeals from a tax court judgment denying its claims against the City of Phoenix (1) for a refund of privilege license taxes assessed on sales of printed advertising supplements to retail advertisers for insertion into newspapers, and (2) for a refund of use taxes assessed on supplies and spare parts consumed by Sun World in its printing process. The City of Phoenix cross-appeals from the judgment ordering the City to refund privilege license taxes (1) on Sun World's sales of printed advertising circulars to publishers who distribute them to the public without cost, and (2) on its sales of printed materials to advertising "brokers."

## BACKGROUND

Sun World is a Texas Corporation authorized to transact business in Arizona. It is in the business of commercial printing ("job printing") in Phoenix under a privilege license issued by the City.

The City audited Sun World's accounts from May 1982 through September 1985 and then assessed $86,280.13 in additional privilege license and use taxes against Sun World. After exhausting its administrative remedies, Sun World paid the amount due with interest and commenced this refund action.

Sun World and the City stipulated in the tax court that the only remaining areas of dispute between them were the assessment of $36,272.33 in privilege license taxes on sales of advertising supplements for insertion into newspapers, $2,303.56 in privilege license taxes on sales of printed materials to "brokers," $8,567.96 in privilege license taxes on sales of printed materials to pub-

lishers of "free" advertising circulars, and $7,843.19 in use taxes on Sun World's purchases of supplies and spare parts consumed in the printing process. The tax court ruled for Sun World on the "free" publications and "broker" sales issues and for the City on the newspaper inserts and use tax issues. Following entry of judgment, Sun World timely appealed and the City timely cross-appealed.

## SUN WORLD'S APPEAL

A. *Were Sun World's Sales of Advertising Supplements to Retail Advertisers For Insertion Into Newspapers Exempt from Privilege License Taxation?*

■ Phoenix City Code § 14–2(a)(4) imposes a privilege license tax on the gross income from the business of every person in the business of "[j]ob printing, typesetting, engraving, embossing and copying." Phoenix City Code § 14–40(r) provides in part:

Business activity described hereunder shall be exempt from Privilege License Taxes imposed herein, subject to the proof of such exemptions as such proof may be required by this Article and by Regulations adopted hereunder.

. . . .

(r) To sales of printed material provided by a printer licensed and paying a tax under the provisions of Section 14–2(a)(4) where such sale is for the purpose of resale by the purchaser in the form supplied by the job printer.

Phoenix City Code § 14–1 defines "sale" as follows:

Any transfer of title or possession, or both, exchange, barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property, for a consideration or any agreement therefor, and includes any transaction whereby possession of property is transferred but the seller retains the title as security for the payment of the price. . . .

During the audit period, Sun World contracted with various commercial entities to print advertising supplements for insertion into local newspapers. Layout people assembled its ads and sent them to Sun World. After the customer proofed and approved a prototype of the proposed advertising supplement, Sun World printed and folded the required number of copies. Sun World then distributed these copies to the newspapers with which the customer dealt.

Pursuant to contract, each newspaper would physically insert the advertising supplements into its newspapers in the form supplied by Sun World. The customer paid Sun World for printing its advertising supplements and used the newspapers for distributing the supplements, paying the newspapers separately for this service. Not all advertising supplements distributed with newspapers are printed by job printers like Sun World. Newspaper publishers themselves regularly print advertising supplements for their advertisers. However, the contract between the newspaper and the advertiser is always for the purchase of advertising, whether the advertiser supplies advertising supplements through a job printer or through the newspaper publisher.

Sun World discusses cases from other jurisdictions holding that preprinted advertising inserts are "newspapers" or constitute an integral part of a newspaper. Sun World reasons that because newspapers are sold to the public with advertising supplements, and one must buy a newspaper to obtain them, the newspaper publisher effectively "sells" the advertising supplements. Sun World concludes that a job printer's sales of advertising supplements to its advertisers are sales for resale and therefore exempt under Phoenix City Code § 14–40(r).

The City argues that the cases cited by Sun World are inapposite because they deal primarily with the question whether sales of advertising supplements are entitled to various statutory sales tax exemptions for "newspapers." The City states that none of Sun World's cases concerns a statute like Phoenix City Code § 14–40(r). The City also relies on *Caldor v. Heffernan,* 183 Conn. 566, 440 A.2d 767, 25 A.L.R.4th

740 (1981) (an advertising supplement does not become an integral part of the newspaper and does not assume the character of the edition into which it is inserted.)

■ As we read Phoenix City Code § 14–40(r), the question whether a newspaper publisher "sells" the advertising supplements it distributes with its newspapers is immaterial here. Statutes and ordinances that create tax exemptions must be construed narrowly against the taxpayer. *See Shamrock Foods Co. v. City of Phoenix,* 157 Ariz. 286, 288, 757 P.2d 90, 92 (1988). As we noted before, § 14–40(r) exempts from privilege license taxation only income from sales of printed material "for the purpose of resale by the purchaser in the form supplied by the job printer." Here the "purchasers" of Sun World's advertising supplements were the retailer-advertisers for whom they were printed, not the newspaper publishers by whom they were distributed. The parties' extended analysis of whether a newspaper "sells" its advertising supplements does not bear on the question whether Sun World's sales of advertising supplements to its retail advertising customers were exempt as sales "for the purpose of resale *by the purchaser* ...." (Emphasis added.)

Sun World argues that it is entitled to the exemption under § 14–40(r) because its printed advertising supplements were "resold" by its retail advertising customers. Relying on the definition of "sale" in Phoenix City Code § 14–1, Sun World argues that the advertisers' transfer of possession of the advertising supplements to newspaper publishers was "for a consideration" in the form of a lower advertising rate over what would have been charged for supplements printed by the newspapers themselves. Sun World alternatively contends that its advertisers ultimately transferred possession of the advertising supplements to newspaper readers "for a consideration" consisting of the readers giving up their time and forebearing other activities to read and consider the supplements. Sun World notes that the City does not assess "job printing" privilege license taxes against newspapers for their income attrib-

utable to their printed advertising supplements because, according to Sun World, the City "recognizes this to be a sale for resale."

We first consider Sun World's implicit contention that income earned by newspapers from printing their own advertising supplements is not taxed as income from "job printing" because it is exempt as income from "sale[s] for resale." This contention is plainly incorrect. A newspaper that prints advertising supplements and distributes them with its newspapers is engaged in the business of:

> [p]ublication of newspapers, magazines or other periodicals and publications when published within this city, measured by the gross income derive[d] from subscriptions, local advertising and notices ...

Phoenix City Code § 14–2(a)(5). Income of newspaper publishers attributable to printing advertising supplements for insertion in their own newspapers is subject to privilege license taxation under this section. This analysis explains why the City does not also seek to tax it as income from "job printing."

We also cannot agree with Sun World's contention that its advertising customers "resold" the advertising supplements Sun World printed. It is true that these advertising customers transferred possession of the advertising supplements to newspaper publishers and ultimately to newspaper readers. It is legally incorrect, however, to say that these transfers were "for a consideration," such that they would constitute "sales" as defined by Phoenix City Code § 14–1.

■ Any performance which is bargained for is consideration. Courts do not ordinarily inquire into the adequacy of consideration. *Carroll v. Lee,* 148 Ariz. 10, 712 P.2d 923 (1986). In *Yuma National Bank v. Balsz,* our supreme court stated:

> Consideration, like every other part of a contract, must be the result of agreement. The parties must understand and be influenced to the particular action by something of value or convenience and inconvenience, recognized by all of them

as the moving cause. That which is a mere fortuitous result flowing accidently from an arrangement, but in no degree prompting the actors to it, is not to be esteemed a legal consideration.

28 Ariz. 336, 343, 237 P. 198, 200–201 (1925); (quoting from *Kirkpatrick v. Muirhead*, 16 Pa. 117, 126 (1851)).

■ Measured against these standards, the "performance" rendered by newspaper readers to Sun World's advertising customers plainly fails to qualify as consideration. The advertiser has its advertising supplement delivered to the newspaper reader as an unconditional gift, which the reader may do with at liberty. The advertiser does not receive a "consideration" from the reader. Consequently there is no "sale" within Phoenix City Code § 14–1.

■ Sun World argues in the alternative that an advertiser "sells" advertising supplements to a newspaper publisher for "consideration" in the form of lower rates than the publisher would charge if it had printed the supplements itself. This argument also fails. Advertisers pay newspaper publishers for distributing their advertising supplements. Obtaining possession of the advertising supplements is not the newspaper publisher's objective in the transaction but is merely a necessary step that enables the publisher to make the distribution for which the advertiser pays. Advertisers do not "sell" advertising supplements to newspaper publishers; they buy the publishers' services in distributing them. Newspaper publishers charge lower rates for distributing advertising supplements printed by job printers than they charge for distributing advertising supplements they print themselves because printing the advertising supplements obviously adds to their costs. The "reduced" rate for distribution cannot be viewed as consideration flowing from newspaper publishers to their advertisers in exchange for the "sale" of advertising supplements.

There is thus no legal basis for Sun World's exemption claim under Phoenix City Code § 14–40(r) for sales of printed newspaper advertising supplements to its advertising customers.

**B.** *Was Sun World Entitled to Exemption from Use Taxation on Its Purchases of Consumable Supplies?*

■ Phoenix City Code § 14–49 imposes an excise tax on "[e]very person storing, using, or otherwise consuming in this City tangible personal property purchased or leased from a retailer...." This form of excise tax is commonly known as a use tax. Phoenix City Code § 14–50(a)(8) exempts from the City's use tax "[p]roperty purchased by manufacturers of tangible personal property which directly enters into and becomes an ingredient or a component part of the manufactured, fabricated, or processed article or commodity manufactured by the purchaser for sale in the regular course of business." Section 14–51(a)(1) additionally exempts "[p]roperty consisting of machinery or equipment, used directly in manufacturing, processing, fabricating or job printing." Section 14–50.-1(b)(1) excludes from this exemption "expendable materials," defined as any item of which the "unit cost to the purchaser is less than $100.00."

Sun World uses three broad categories of goods in producing printed materials: newsprint, ink, and consumable supplies. The City exempts ink and newsprint purchased by Sun World because these items become part of the final product. For the audit period, the City assessed use taxes against Sun World on its purchases of film, supplies used throughout the printing process, replacement parts costing less than $100.00, and a forklift lease and associated repair parts.

At trial, Sun World employee Raymond Qualls testified that the forklift was not used in the printing process itself. Further, each item of film, supplies, and replacement parts about whose value he had any knowledge had a unit cost of less than $100.00.

On appeal, Sun World does not dispute the tax court's implicit conclusion that Sun World's consumable supplies were not entitled to the exemption provided by Phoenix City Code § 14–50(a)(8) because job printing does not constitute the manufacturing

of tangible personal property. Sun World also does not contest the tax court's conclusion that the per-job cost of each of the consumable supplies at issue was less than $100.00. Sun World contends only that the tax court erred in concluding that Sun World had failed to meet its burden of proving that each of the various consumable supplies was used by Sun World directly in the printing process.

The testimony tends to support the proposition that the consumable supplies in question are "used directly in . . . job printing" within the meaning of § 14–50.1(a)(1). However, the same testimony uniformly supports the conclusion that each item's unit cost was less than $100.00. Of the individual items whose per-item cost Sun World's witness could remember, every one was considerably less than $100.00. There was substantial evidence from which the tax court could reasonably have concluded that each of the consumable supplies for which Sun World sought a use tax exemption under § 14–50.1(a)(1) constituted "expendable materials" excluded from the exemption pursuant to § 14–50.1(b)(1).

## THE CITY'S CROSS APPEAL

A. *Were Sun World's Sales of Printed Materials to Publishers of Advertising Circulars Distributed to the Public Without Cost Exempt from Privilege License Taxation?*

During the audit period, Sun World performed printing for many customers, who publish advertising circulars and newspapers distributed to the public without charge. These publishers charge for advertising in their publications.

On cross appeal, the City argues that Sun World is not entitled to the exemption provided by Phoenix City Code § 14–40(r) because the printed materials it sells to "free publications" are not for resale, but rather for free distribution. The City further notes that while Sun World is taxed on its income from the business of "job printing" under Phoenix City Code § 14–2(a)(4), publishers of "free publications" are taxed on their income from the business of "local advertising by billboards, direct mail, radio,

television, or by any other means" under § 14–2(a)(1). The City contends that the tax court's ruling incorrectly allows the City to tax only the publishers' "local advertising" income, not the "job printing" income separately earned by Sun World.

In response, Sun World argues that the publishers' free distribution of advertising circulars is actually "for a consideration" and therefore constitutes a "sale" within Phoenix City Code § 14–1. Sun World concludes that its sale of printed materials to publishers of free advertising circulars constitutes an exempt "sale for resale by the purchaser . . ." within Phoenix City Code § 14–40(r).

Based on our analysis of consideration in connection with sales of advertising supplements for insertion into newspapers, we reject Sun World's contention that the free distribution of advertising circulars constitutes a "sale."

We also reject the tax court's analysis of the overall transaction as including resale of Sun World's printed materials by each publisher to its advertisers. Sun World's business activity could be viewed as having included the sale of printed advertising newspapers and circulars to its publisher-customers. It is incorrect to say that the publishers in turn merely resold those materials to their advertising customers. The publishers actually sold their advertisers an integrated series of services aimed at disseminating the advertisers' commercial messages to the public in an organized form. The compiling and distribution components of the publishers' services are crucial and cannot be ignored. *See* Phoenix City Code § 14–2(a)(1) (taxing income from the business of "local advertising.")

We agree with the tax court that if each of Sun World's publisher-customers had dealt with only one advertiser and had delivered all printed materials to the advertiser for its own distribution, Sun World's transactions with its publisher-customers would have been exempt as sales for re-

sale.[1] This scenario is not, however, what actually happened, and we cannot agree with the tax court that the difference is "immaterial."

Sun World's sales of printed materials to publishers of free advertising newspapers and circulars were not "sales for resale" exempt under Phoenix City Code § 14–40(r).

B. *Did the Tax Court Err in Considering Sun World's Challenge to the Assessment of Privilege License Taxes on its Sales to "Brokers"?*

A "broker" is a company that sells a printing job and then farms it out to a printing company for production. When Sun World does a printing job for a broker, it bills the broker directly. The broker then effectively resells the printed materials to its client.

The tax court rejected the City's contention that Sun World failed to raise the issue of sales to printing brokers in its protest before the City Auditor.

On cross appeal, the City does not challenge the tax court's resolution of this issue. It argues only that Sun World failed to raise this issue at the administrative level and that under *Univar Corp. v. City of Phoenix*, 122 Ariz. 220, 594 P.2d 86 (1979), the tax court was therefore barred from considering it. The City has argued "that while the sale for resale issue was raised, the broker issue as a separate issue was not raised until the trial in superior court."

We disagree with the City that Sun World's protest insufficiently raised the question whether the City improperly taxed it on sales of printed materials to printing brokers. Sun World's protest was labelled "Request for Administrative Review, Correction or Redetermination of Audit; Request for Hearing," filed with the City Auditor. Subparagraph 7.5 stated:

The taxpayer does commercial printing for other advertising companies that charge their customers the privilege license (sales) tax. These, also, are sales for resale and the taxpayer is not liable for the privilege license (sales) tax attributable in the audit to said printing.

Although this passage does not specifically identify the "other advertising companies" as printing brokers, its substance and context make clear that printing brokers would be included in that category. We agree with the tax court that Sun World sufficiently raised the issue of sales of printed materials to printing brokers before the City Auditor.

## CONCLUSION

On Sun World's appeal, the tax court correctly determined that Sun World's sales of printed advertising supplements for insertion into newspapers were not exempt as sales for resale by the purchaser. The tax court also correctly held that Sun World failed to sustain its burden of proving entitlement to exemption from use taxation of consumable supplies.

On the City's cross appeal, the tax court erred in determining that Sun World's sales of printed materials to publishers of advertising newspapers and circulars distributed to the public without cost were exempt as sales for resale. The tax court correctly determined that Sun World had challenged before the City Auditor the assessment of privilege license taxes on its sales of printed materials to printing brokers.

Affirmed in part; reversed in part; remanded for entry of judgment in accordance with this opinion.

JACOBSON, P.J., and FIDEL, J., concur.

---

**1.** A publisher who operated in this way would amount to a printing "broker," discussed *infra.*