938 P.2d 62

**ARIZONA DEPARTMENT OF REV-ENUE, an agency of the State of Arizona, Plaintiff–Appellant,**

v.

**Warren and Ann DANIEL, husband and wife; Bingo West, Inc., an Arizona corporation, Defendants–Appellees.**

**No. 1 CA–TX 95–0009.**

Court of Appeals of Arizona, Division 1, Department T.

June 27, 1996.

Grant Woods, Attorney General by James M. Susa and Joseph A. Kanefield, Assistant Attorneys General, Phoenix, for Plaintiff–Appellant.

Walker Ellsworth, P.L.C. by Frank L. Migray, Phoenix, for Defendants–Appellees.

OPINION

GERBER, Judge.

The Arizona Department of Revenue (DOR) assessed delinquent transaction privilege (sales) taxes against Warren Daniel, Ann Daniel and Bingo West, Inc., (taxpayers) on their sales of bingo paper[1] to licensed operators of bingo games in Arizona. The appeal presents these questions:

1. Whether the taxpayers' sales of bingo paper to bingo licensees constituted retail sales under A.R.S. section 42–1310.01;

2. Whether DOR could validly impose late filing and late payment penalties against the taxpayers under A.R.S. section 42–136(A) and (D) for periods before that statute became effective; and

3. Assuming the taxpayers' bingo paper sales were taxable, whether the tax court should have abated DOR's assessment of late filing and late payment penalties against the taxpayers.

Because our ruling on the first issue is dispositive of this appeal, we need not consider the second and third issues.

***FACTS AND PROCEDURAL HISTORY***

From 1983 to 1987, taxpayers Warren and Ann Daniel engaged in the business of selling bingo-related supplies and equipment. In 1987, they incorporated taxpayer Bingo

---

1. Bingo paper consists of sheets of paper that contain multiple, unique 25–space number grids used in playing bingo.

West, Inc., and continued in the same business.

The taxpayers' customers are bingo licensees who conduct bingo games to generate funds as permitted by Arizona law. For a patron to play any given bingo game and thus have a chance to win a prize, the patron must obtain from the bingo licensee a bingo paper or papers that are color-coded or numbered to correspond to that particular game. A bingo patron obtains bingo paper by paying a price specified by the bingo licensee. Without paying this price, the patron will receive no bingo paper and will be unable to play any bingo game.

The patron who obtains bingo paper may use it to play only the bingo games to which it relates. Although a patron may not give or sell bingo paper to another person to use in play, he is otherwise free to do anything with it that is not prohibited by law. Bingo paper becomes useless once the corresponding game or series of games have been concluded.

This litigation concerns the audit period January 1983 through May 1990. In October 1990 DOR issued transaction privilege tax assessments against Warren and Ann Daniel for January 1983 through October 1987, and against Bingo West, Inc., for November 1987 through May 1990. The taxpayers protested the assessments unsuccessfully before DOR but prevailed on appeal to the Arizona Board of Tax Appeals, Division Two. *Daniel and Bingo West v. Arizona Dep't of Revenue*, 2 Ariz. St. Tax. Rptr. (CCH) ¶ 400–074 (BTA Div. 2, July 13, 1993).

The DOR appealed from the Board's ruling by filing this action in the tax court. *See* Arizona Revised Statutes Annotated (A.R.S.) section 42–124(B). The tax court ruled for the taxpayers on cross-motions for summary judgment, relying on *Shamrock Foods Co. v. City of Phoenix*, 157 Ariz. 286, 757 P.2d 90 (1988). DOR timely appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B).

### ANALYSIS

NATURE OF TAXPAYERS' SALES OF BINGO PAPER TO LICENSEES

Arizona Revised Statutes Annotated section 42–1306(A)(1991) imposes privilege taxes at fixed rates measured by the gross proceeds of sales or income derived from specified business activities in Arizona. Arizona Revised Statutes Annotated section 42–1310.01(Supp.1995) imposes this tax on the business of selling tangible personal property at retail, subject to a number of deductions and qualifications.

For all transaction privilege tax purposes, A.R.S. section 42–1301(13)(Supp.1995) defines "sale" as "any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatever, ... for a consideration...." Arizona Revised Statutes Annotated section 42–1310.01(P)(3)(Supp.1995) defines "selling at retail" as "a sale for any purpose other than for resale in the regular course of business in the form of tangible personal property...."

The DOR assessed retail transaction privilege taxes on the taxpayers' gross proceeds from bingo paper sales. It thereby found that those sales were not for resale. In the tax court and on appeal, DOR has contended that bingo licensees, the taxpayers' customers, do not "sell" bingo paper to their patrons within the meaning of section 42–1301(13). DOR points out that a bingo patron cannot play the game without bingo paper and that bingo paper has no value other than as scratch paper apart from the right to play the game. The DOR asserts that bingo licensees do not sell their patrons "a few sheets of brightly colored paper" but rather sell the right to play the game along with essential information.

The DOR also contends that it is bingo licensees themselves who put bingo paper to use. It argues they do so in the same way that other service businesses use consumable supplies like cash register tape, stationery, paper clips, invoice forms, and staples, all of which may also be physically transferred to the business's customers. DOR asserts that licensees do not sell bingo paper as tangible personal property but give it away with the proffering of the game fee. Under this view the taxpayers' sales of bingo paper to their

licensee customers are therefore taxable retail sales.

In response, the taxpayers contend that bingo licensees "sell" bingo paper to their patrons as provided by section 42–1301(13) because each licensee transfers both title and possession of bingo paper to its patron and receives money in return. The taxpayers point to DOR's stipulation filed in the tax court that bingo paper is "tangible personal property" and that the regular course of business of the bingo licensee is conducting bingo games. The taxpayers contend that their own sales of the same bingo paper to licensees constitute sales for resale under section 42–1310.01(P)(3). They contend that those sales accordingly are not taxable under the retail classification.

In the tax court the taxpayers relied on the Arizona Supreme Court's decision in *Shamrock Foods Co.* The taxpayer in *Shamrock* sold disposable paper and plastic products such as cups, napkins, straws and paper bags to restaurants. The restaurants in turn made those items available to their customers with the meals they purchased.

The City of Phoenix assessed privilege license (sales) taxes on Shamrock's sales of these items. In ruling for Shamrock, the trial court held that all such items were sold for resale and hence were not taxable. On appeal, this court affirmed as to paper and plastic items necessary to contain food or beverages sold by restaurants and reversed as to non-container items. On review, the supreme court disagreed. It stated:

> ... Whether an item is a "critical element" of the product sold is not the dispositive issue under the City's ordinance. Code § 14–2 only applies to retail sales which are sales "for any purpose other than resale thereof." The relevant factor is not whether the product is used as a container, but whether the product is transferred or possessed by the restaurant's customer for a consideration. So long as we find that the products are transferred to or possessed by the restau-

rant customer for consideration, a sale has occurred. City Code § 14–1.

*Id.* at 288–89, 757 P.2d at 92–93. The taxpayers here make a similar argument: Licensees transfer bingo paper which bingo players possess for a fee. They contend that this court should find that a sale took place if it determines that the transaction occurred for a consideration.

The DOR asserts that applying *Shamrock* to the facts of this case would stretch *Shamrock* beyond its proper scope and contravene the legislative intent behind the transaction privilege tax on retail sales. DOR distinguishes *Shamrock* primarily on the ground that bingo licensees transfer bingo paper as evidence of a bingo patron's right to play the game for a bingo fee.

The DOR fails to distinguish *Shamrock* from this case on any legally significant ground. Nothing suggests that the *Shamrock* court would have viewed the disposable paper and plastic products in question as "resold" if restaurants transferred those products for a price other than in connection with the sale of food and beverages. The relevant factor in *Shamrock* was whether the restaurant transferred the product "for a consideration." The paper and plastic products in that case met that test. So also does the bingo paper the taxpayers provide to bingo licensees.

The DOR also fails in its attempt to disqualify bingo licensees' transfers of bingo paper as resales "in the form of tangible personal property" under section 42–1310.01(P)(3).[2] Bingo paper evidences intangible gaming rights and information for which the patron pays. We cannot agree with DOR's assertion that these intangibles are all the patron has bought.

Bingo paper has a dual nature. It evidences the patron's right to play a particular game with a chance to win a prize. It is also tangible personal property which the patron possesses and necessarily uses in playing the

2. The ordinance that the supreme court interpreted in *Shamrock Foods Co. v. City of Phoenix*, 157 Ariz. at 288–89, 757 P.2d at 92–93, defined retail sales much the same as section 42– 1310.01(P)(3), but did not restrict the "sales for resale" exclusion to sales made "in the form of tangible personal property."

game and through which he acquires some of the information about how to play.

The taxpayers urge us to rely on *Aladdin's Castle, Inc. v. Director of Revenue*, 916 S.W.2d 196, 198 (Mo.1996), which held that prizes at an arcade fell outside a Missouri use tax. The *Aladdin* court reasoned that arcade owners received consideration for the prizes in the form of the fees they charged patrons for game tokens. The prizes were tangible personal property whose price was included in the fees the arcade charged patrons to play games with a chance of winning prizes. *Id.* The facts of *Aladdin* are similar to those here. The bingo paper is tangible personal property whose cost is included in the game fees patrons pay to play bingo with a chance at winning a prize.

The DOR contends that applying *Shamrock* to this case leads to the absurd consequence that no retail transaction privilege tax would ever be due on the sale of any product delivered to its ultimate user as part of any service business. DOR argues that a whole category of products would forever escape the tax because the seller to the service business would be exempt from tax and because the service business itself is not a retailer subject to the transaction privilege tax. Ariz. Admin. Code R15–5–104. DOR urges that under the tax court's approach a law firm would be deemed to sell to its clients the stationery used to send letters or legal documents but that the office supplier that sold the stationery to the law firm would not be subject to the retail transaction privilege tax on those sales.

Contrary to DOR's contention, a holding for the taxpayers here does not exempt from transaction privilege taxation all consumable overhead items. An essential objective of the transaction between the bingo licensee and the patron is the transfer of bingo paper to the end-user's possession as tangible personal property, for a consideration, so that the end-user may physically put it to the use that it was designed to serve. In contrast, the law office client who acquires an executed original will does not "buy" the bond paper and laser toner for the purpose of using them as paper and toner. He instead acquires a legal instrument created from the paper and

toner the firm previously bought for its own general use. *See generally* 2 Jerome R. Hellerstein and Walter Hellerstein, State Taxation, at ¶ 14.02[1] (2d ed. 1992).

The DOR's attempted analogy between bingo paper and movie tickets also fails. Movie-goers do not use tickets as bingo players use bingo paper. A movie ticket functions exclusively as evidence of its purchaser's right to watch the movie. Bingo paper evidences the bingo patron's right to play the game and also serves as both an instruction and a tool in playing it.

The Arizona cases on which DOR relies provide only illusory support for its position. DOR infers from *State Tax Commission v. Ryan–Evans Drug Stores*, 89 Ariz. 18, 357 P.2d 607 (1960), that the supreme court does not consider S & H Green Stamps to be tangible personal property. It relies on that case to support the proposition that bingo players who obtain bingo paper purchase only the right to play the game. DOR derives the same principle from *State Tax Commission v. Consumers Market Inc.*, 87 Ariz. 376, 351 P.2d 654 (1960). However, *Ryan–Evans* held that trading stamps a retailer gave its customer with a purchase did not constitute a cash discount on the purchase. The retailer could not offset his cost for the stamps against the price received from the customer in calculating taxable gross receipts. *Id.* at 23, 357 P.2d at 610. *Consumers Market* held that the value of merchandise a retailer gave to customers who redeemed trading stamps did not constitute part of its gross receipts. The *Consumers Market* court reasoned that the retailer had already paid a transaction sales tax for the merchandise and included its costs within the cost of the merchandise. *Id.* at 379, 351 P.2d at 656.

Neither *Ryan–Evans* nor *Consumers Market* considered whether retailers sold trading stamps as tangible personal property. Far from being tangible personal property, trading stamps are evidence of the recipient's intangible contractual right to receive merchandise premiums whenever the recipient surrenders them. In contrast, the bingo player acquires bingo paper to put to physical use as the source of in-

struction and as the exclusive medium for playing bingo.

*State v. Mixter*, 26 Ariz.App. 62, 546 P.2d 39 (1976), on which DOR relies, actually supports the taxpayers. In *Mixter*, Division Two of this court held that trying to obtain a bingo jackpot by presenting an altered bingo card did not constitute the crime of fraudulent attempt to obtain money with a bogus written instrument. *Id.* at 63, 546 P.2d at 40. The court observed that a bingo card is an item of game equipment. *Id.* That it does not itself give the right to receive a prize as a legal "instrument" in *Mixter* does not preclude it from being tangible personal property subject to sale.

Our more recent decision in *Sun World Corp. v. City of Phoenix*, 166 Ariz. 39, 800 P.2d 26 (App.1990), also fails to support DOR. There we held that advertisers who buy advertising supplements from job printers and have them delivered to prospective customers as newspaper inserts do not resell the inserts because they receive no consideration for them. *Id.* at 43, 800 P.2d at 30. Newspaper readers give the advertisers nothing as a bargained-for exchange for the supplements. Instead, "[t]he advertiser has its advertising supplement delivered to the newspaper reader as an unconditional gift, which the reader may do with at liberty." *Id.*

The DOR cites *PCS, Inc. v. Arizona Department of Revenue*, 186 Ariz. 539, 925 P.2d 680 (App. 1995), in support of its contention that the bingo licensees to whom the taxpayers sell bingo paper do not resell it to their patrons. *PCS* does not support that view. In that case PCS bought blank plastic cards from outside Arizona, encoded and hot-stamped them in Arizona with individualized information supplied by the prescription benefit plans with which it contracted, and then mailed or shipped finished prescription drug plan identification cards to its client benefit plans and their employee beneficiaries in other states.

The sole issue of substantive tax law in *PCS* was whether the taxpayer had stored, used or consumed the blank plastic cards in Arizona so that it was subject to Arizona use taxation on their cost pursuant to A.R.S. section 42–1408(A). Both sides assumed implicitly that PCS did not resell the finished cards when it provided them to its clients and their beneficiaries, and both argued the case accordingly. The issue of resale was not briefed before the *PCS* court.[3] Accordingly, given the narrowness of the issue framed for the *PCS* court, its statement that "PCS does not resell the finished cards ..." merely functioned as part of a general commentary on the practical effect of the court's holding and was unnecessary to the reasoning that underlay it.

The DOR cites a number of out-of-state decisions holding that hotels or common carriers do not sell or lease items purchased for their guests' use.[4] It also cites *Good Humor Co. of California v. State Board of Equalization*, 152 Cal.App.2d 873, 313 P.2d 640, 643 (1957), which held that the taxpayer did not resell the dry ice it used to pack ice cream products it sold to its customers. This case does not present the particular issues with which any of DOR's out-of-state cases were concerned. None of these decisions supports any result different from that to which our analysis above leads us.

3. The question whether PCS effectively sold its finished prescription plan identification cards to its out-of-state clients or their beneficiaries might well have been critical in that litigation if PCS had contended it was exempt from use taxation on the blank plastic cards because they "[became] an ingredient or component part of [a] manufactured, fabricated or processed article, substance or commodity for sale in the regular course of business" within A.R.S. section 42–1409(A)(4)(Supp.1995). PCS made no such contention in that case. The PCS court necessarily expressed no opinion on that issue in ruling as it did.

4. *City of Colorado Springs v. Investment Hotel Properties, Ltd.*, 806 P.2d 375 (Colo.1991); *Florida Hotel and Motel Ass'n, Inc. v. State*, 635 So.2d 1044 (Fla.App.1994); *American Airlines, Inc. v. Dep't of Revenue*, 58 Ill.2d 251, 319 N.E.2d 28 (1974); *Greensburg Motel Assoc. v. Indiana Dep't of State Revenue*, 629 N.E.2d 1302 (Ind.Tax 1994); *Helmsley Enterprises Inc. v. Tax Appeals Tribunal*, 187 A.D.2d 64, 592 N.Y.S.2d 851 (1993).

## CONCLUSION

For the reasons stated above, the decision of the tax court is affirmed. .

SULT, P.J., and KLEINSCHMIDT, J., concur.